**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 99-10610

WILLIE L. BOYD,

Petitioner - Appellant,

VERSUS

KENNETH S. APFEL, Commissioner of Social Security,

Respondent - Appellee.

Appeal from the United States District Court
For the Northern District of Texas

January 19, 2001

Before WIENER and STEWART, Circuit Judges; and ROSENTHAL, District
Judge.[1]

LEE H. ROSENTHAL, District Judge.

Willie L. Boyd appeals the district court's judgment
affirming the Commissioner's decision to deny him disability
benefits. Boyd asserts that the Administrative Law Judge ("ALJ")
applied an incorrect legal standard in assessing the extent of
Boyd's ability to work, and that the ALJ's decision was unsupported
by the evidence. This court finds that the ALJ did apply the

---

[1]   District Judge of the Southern District of Texas, sitting
by designation.

correct legal standard, but that the evidence was not sufficient to satisfy the Commissioner's burden to show that despite his impairments, Boyd was able to perform available work. This court vacates the ALJ's ruling and remands this case to the Commission for further consideration.

## I. BACKGROUND

Willie L. Boyd was born in 1956 and attended school through the tenth grade. He later obtained a GED. Boyd worked as a welder for eleven years, until April 1994, when he lost his job after missing thirty of his last ninety days of work due to illness. In April 1994, Boyd received hospital treatment for complaints of pain and high blood pressure. He was given a prescription for antidepressant medication and instructed to decrease his alcohol consumption. He briefly attempted to work as a general laborer in June 1994 and has not worked since. Boyd asserts that he has been completely disabled since that date.

In October 1994, Boyd returned to the hospital for another examination. On that visit, he was diagnosed with liver damage and was again instructed to stop drinking. On December 30, 1994, Boyd filed for disability benefits under the Social Security Act, alleging that the combined effects of hepatitis, hypertension, dizziness, leg and back pain, and fatigue made him unable to work.

In February 1995, Boyd was again hospitalized. Doctors diagnosed him as suffering from diabetic ketoacidosis and mild to

2

moderate pancreatitis. Doctors removed his gall bladder through laparoscopic surgery. Boyd's initial claim for disability benefits was denied on March 27, 1995. He requested a hearing before an Administrative Law Judge, but his illnesses delayed the hearing until June 1996.

In October 1995, Boyd's treating internist referred him to a psychiatric clinic. In January 1996, Dr. Juanaelena Garcia examined Boyd. Dr. Garcia's report of the January 1996 examination described symptoms of weekly anxiety attacks, which she diagnosed as the result of "[m]ajor depressive disorder, single episode, moderate," and an adjustment disorder involving anxiety and depression, for which she prescribed an antidepressant, Prozac. Dr. Garcia determined that Boyd had a Global Assessment of Functioning ("GAF")[2] score of 60, a score reflecting "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers)." Dr. Garcia also observed that Boyd was alcohol-dependent and told him that the antidepressant medication would not be effective unless he stopped drinking. On June 11, 1996, during one of Boyd's return visits, Dr. Garcia increased Boyd's Prozac dose to treat a relapse

---

[2] GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994)(DSM-IV).

3

of depressive symptoms.  Dr. Garcia's notes of the June 1996 examination state her opinion that Boyd would be unable to work for a year and that he had a "poor prognosis."  In June 1996, Boyd was hospitalized for a complaint of chest pain and shortness of breath and discharged with medication to treat his hypertension.

The ALJ held a hearing on Boyd's disability claim on June 18, 1996.  The ALJ heard testimony from Boyd; his wife, Diana Boyd; a medical expert, Dr. William Daily; and a vocational expert, Susan Brooks.  The ALJ had Dr. Garcia's records relating to Boyd, but heard no testimony from Dr. Garcia.  The only medical testimony at the hearing pertained to Boyd's "exertional" impairments.[3]

At the hearing, Boyd testified that he suffered from liver problems, diabetes, high blood pressure, pain, panic attacks, depression, suicidal thoughts, and hallucinations.  Boyd testified that he could lift ten pounds and stand for fifteen to twenty minutes.  Although Boyd had completed the tenth grade and later obtained a GED, his spelling and arithmetic skills were

---

[3]     According to Social Security Administration regulations, "[l]imitations are classified as exertional if they affect your ability to meet the strength demands of jobs. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling . . . Limitations or restrictions which affect your ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 404.1569a.

significantly below high school level. Boyd testified that he had been fired from his last job as a certified Class A welder in April 1994, after missing a total one month of work time out of the previous three months. He testified that he tried to return to work as a general laborer in June 1994, but again missed many days of work and was unable to continue.

Diane Boyd testified that her husband suffered from delusions, including seeing people in the room who were not there. She also testified that he was withdrawn, had little social or familial interaction, and was depressed. Diane Boyd testified that her husband's condition had worsened to such an extent that she had spoken with her sister about having Boyd committed to a mental institution.

The Commissioner called Dr. Daily, a specialist in internal medicine, to testify. Dr. Daily did not review the psychiatric records or provide any information as to Boyd's nonexertional impairments. Dr. Daily testified that the medical records showed that Boyd suffered from controllable hypertension; diabetes mellitus, in temporary complete remission; chronic hepatitis B and hepatitis C infections; chest pain; pain in his extremities possibly caused by diabetic neuropathy; and cirrhosis. Dr. Daily testified that the combination of Boyd's physical problems had totally incapacitated him on an intermittent basis since April 1994.

Susan Brooks, the vocational expert, testified that Boyd's previous work as a welder was classified as medium, skilled labor, and that his work as a laborer was classified as medium, unskilled labor. The ALJ asked Brooks a series of hypothetical questions about the kinds of work a person with assumed impairments would be able to perform:

> Q      All right.  Assume that I find that he can do a full range, that a person 40 years of age, with that past work history, tenth grade education, can do a full range of light work?
>
> A      I'm sorry, you said a tenth grade education?
>
>        . . .
>
> Q      Tenth grade education, can do a full range of light work?  I know I can take the grids on that, but I want to ask you if you could assume that I find that this man has such disturbance to the extent that his maybe, his concentration or memory is limited, so that if he does work, he's got to work in a simple, one or two-step-type jobs.  I don't know if his skills or like [sic] transferable to the simple job like that, or just any kind of a job, where he does not have to remember complex instructions, but can understand simple instructions, and where he can carry out, does not have to - can stay on task a full eight hours, but he does not have to think about things too much, just repetitive-type work?
>
> A      In my opinion, it's kind of a misconception about the one to two-step jobs, that most of the jobs, they have several steps.  That is an unskilled level.  They're not complex steps.

```
Q    Okay.  No that's the flush out [sic].

A    So, at an unskilled level, I think that's
     primary [sic] what you're looking at, is
     jobs that are not complex, that require
     less than 30 days of training.
```

(Hearing Transcript, pp. 38-40).

Based on this hypothetical question, Brooks testified that Boyd would be able to work as a production line welder, as a coin collector, or in hardware assembly.  Brooks classified each of these occupations as light, unskilled work that occurred in significant numbers in the local and national economies.

After the hearing ended, the ALJ ordered Boyd examined by a consulting psychologist.  Boyd was examined by Diana Garrison, M.A., under the supervision of Dr. Joanna Ellis, and by Dr. S.S. Pepermintwala, a psychiatrist at Parkland Hospital.  The results of their evaluations were a Psychological Report prepared by Diana Garrison; a Medical Assessment of Ability to Do Work-Related Activities prepared by Dr. Ellis; and an Affective Disorders Form and a Severity of Impairment form completed by Dr. Pepermintwala.

In her Psychological Report, Garrison diagnosed Boyd as suffering from psychotic disorder, chronic alcohol dependence, and an alcohol-related cognitive disorder.  Garrison administered a number of tests to measure intellectual and other functioning levels.[4]  She assessed Boyd's I.Q. as 76, within the borderline

---

[4]    The tests Garrison and Ellis administered included an I.Q. test, a variety of memory tests, and a "trail-making" test in

intellectual functioning range.[5]  Under the "Activities of Daily Living" section of the Psychological Report, Garrison reported, based on Boyd's representations, that Boyd could tend to basic self-care tasks, but was unable to drive due to "panic attacks" and could not manage his own finances.  Garrison reported that Boyd had a tendency to avoid others and that his "Concentration, Persistence, [and] Pace" were good.[6]  Garrison concluded that Boyd had a GAF of 50.  A GAF score of 41 to 50 is classified as reflecting "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."[7]

   Dr. Ellis assessed Boyd's ability to perform work-related mental tasks.  In her report, Dr. Ellis stated that Boyd "exhibits few adaptive coping skills or adequate social skills" and that his

---

which the subject is asked to connect numbers on a page.

   [5]  The standardized tests resulted in a verbal IQ score of 75, a performance IQ score of 79, and a full scale IQ score of 76, all within the "borderline intellectual functioning" range of 71-84.  DSM-IV, p. 45.

   [6]  "Concentration, persistence and pace" refers to "the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings . . . In work evaluations, concentration, persistence, and pace are assessed through such tasks as filing index cards, locating telephone numbers, or disassembling and reassembling objects."  20 C.F.R. pt. 220, app. 1.

   [7]  DSM-IV, p. 32.

ability to deal with work stresses and function independently was "poor/none." These limitations resulted in "the need for close supervision" and "considerable trepidation/anxiety as concerns taking on job responsibilities," as well as an "inclination [] to avoid situations in which he is expected to interact with the public."

In his assessments, Dr. Pepermintwala, an examining psychiatrist, concluded that Boyd had "major depressive Disorder with Psychotic features," with "slight" restriction of activities in daily living; "marked" difficulties in maintaining social functioning; and "frequent" deficiencies in concentration, persistence, or pace.

The ALJ issued his decision denying Boyd benefits on January 14, 1997. The ALJ found that Boyd's physical, exertional impairments did not limit his ability to sit, stand, or lift, and did not preclude him from performing a full range of light work. To analyze Boyd's nonexertional impairments, the ALJ completed a Psychiatric Review Technique Form ("PRT"), in which he found that Boyd had an affective disorder, but that it did not meet or equal the impairments listed in listing 12.04, 20 C.F.R. pt. 404, subpt. P, app. 1.[8] The ALJ's entries on the PRT form specifically stated

---

[8] Listing 12.04 addresses "affective disorders" and provides that a claimant is disabled if he has a sufficiently severe "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." The listing states that "[t]he required level of severity for these disorders is met when the requirements

9

in both [subsections] A and B are satisfied." These subsections are as follows:

    A.   Medically documented persistence, either continuous or intermittent, of one of the following:
    1.   Depressive syndrome characterized by at least four of the following:
        a.   Anhedonia or pervasive loss of interest in almost all activities; or
        b.   Appetite disturbance with change in weight; or
        c.   Sleep disturbance; or
        d.   Psychomotor agitation or retardation; or
        e.   Decreased energy; or
        f.   Feelings of guilt or worthlessness; or
        g.   Difficulty concentrating or thinking; or
        h.   Thoughts of suicide; or
        i.   Hallucinations, delusions or paranoid thinking; or
    2.   Manic syndrome characterized by at least three of the following:
        a.   Hyperactivity; or
        b.   Pressure of speech; or
        c.   Flight of ideas; or
        d.   Inflated self-esteem; or
        e.   Decreased need for sleep; or
        f.   Easy distractability; or
        g.   Involvement in activities that have a high probability of painful consequences which are not recognized; or
        h.   Hallucinations, delusions or paranoid thinking; or
    3.   Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

    B.   Resulting in at least two of the following:
    1.   Marked restriction of activities of daily living; or
    2.   Marked difficulties in maintaining social functioning; or
    3.   Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
    4.   Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors.

that Boyd had "moderate restrictions of [activities of] daily living, moderate difficulties in maintain[ing] social functioning, with never any deficiencies of concentration, persistence or pace and only once or twice having episodes of deterioration or decompensation in work or work-like activities."[9] The ALJ concluded that while these nonexertional impairments were not "non severe," they did not meet or equal the requirements of listing 12.04. The ALJ proceeded to apply a "residual functional limitation assessment," called for when a severe impairment is present but not in a degree that meets or equals a listed impairment.[10] The ALJ concluded that Boyd could not perform his past work as a welder and construction worker. However, the ALJ found that Boyd had a residual functional capacity for a full range of light work, not reduced by his nonexertional limitations.

---

20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.04.

[9] "Deterioration or decompensation" in work or work-like settings refers to "repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs and symptoms (i.e., decompensation) with an accompanying difficulty in maintaining activities of daily living, social relationships, and/or maintaining concentration, persistence, or pace (i.e., deterioration which may include deterioration of adaptive behaviors)." 20 C.F.R. pt. 220, app. 1.

[10] "Residual functional capacity" refers to the ability to perform work despite physical or mental impairments. 20 C.F.R. § 404.1545a.

11

In denying disability benefits, the ALJ concluded that Boyd was able to work in employment positions existing in significant numbers in the national economy. The ALJ based this ruling on the testimony of the vocational expert, given in response to hypothetical questions intended to account for Boyd's abilities and impairments.

The Appeals Council denied review on July 17, 1998. Boyd timely appealed the denial of benefits to the District Court for the Northern District of Texas under 42 U.S.C. § 405(g). The district court referred Boyd's case to a magistrate judge. The magistrate judge found that substantial evidence supported the findings of the ALJ and that the ALJ did not apply an improper legal standard. The district court adopted the findings and conclusions of the magistrate judge, without comment.

Boyd now appeals the district judge's judgment affirming the Commissioner's decision to deny benefits, arguing that the ALJ applied an improper legal standard and that there was no substantial evidence to support the ALJ's decision to deny benefits.

## II.  THE STANDARD OF REVIEW

"Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action" in a district court. 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision to deny benefits

12

> is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied. Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. In applying this standard, we may not re-weigh the evidence or substitute our judgment for that of the Commissioner.

Harris v. Apfel, 209 F.3d 413, 417 (5th Cir. 2000) (quoting Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995) and citing Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988)) (footnotes and quotation marks omitted).

This court must affirm the Commissioner's determination unless this court finds that 1) the ALJ applied an incorrect legal standard, or 2) that the ALJ's determination is not supported by substantial evidence. Boyd asserts that both defects are present. The Commissioner defends the denial of benefits and asserts that even if the ALJ erred, remand would not lead to a different result.

III. ANALYSIS

A.   The Legal Standard Applied by the ALJ

Where a claimant attempts to show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months", 42 U.S.C. § 423(d)(1)(A), the ALJ must follow a "five-step

13

sequential process, the first four steps of which place the burden on the claimant." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The five steps are:

> (1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.
>
> (2) An individual who does not have a "severe impairment" will not be found to be disabled.
>
> (3) An individual who meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.
>
> (5) If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citing Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990)); see also 20 C.F.R. § 404.1520 (b)-(e).

In the fifth step, the burden is on the Commissioner to show that the claimant can perform relevant work. "If the [Commissioner] meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." Muse, 925 F.2d at 789. "'A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the

14

analysis.'" Greenspan, 38 F.3d at 236 (quoting Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987)).

The Commissioner has instituted a corollary procedure for determining the merits of mental disability claims. 20 C.F.R. § 404.1520a. Under the procedure in effect at the time of Boyd's hearing before the ALJ,[11] the examiner of the mental disability claim (in this case, the ALJ) must first "record the pertinent signs, symptoms, findings, functional limitations and effects of treatment contained in [the] case record," in order to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). If an impairment is found, the ALJ must determine whether certain medical findings relevant to a claimant's ability to work are present or absent. 20 C.F.R. § 404.1520a(b)(2). The ALJ must then evaluate the degree of functional loss resulting from the impairment in four separate areas deemed essential for work. 20 C.F.R. § 404.1520a(b)(3). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe," which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(c)(1). If the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the

_____

[11] Since Boyd's hearing, C.F.R. § 404.1520a has been revised and amended. The revisions and amendments became effective on September 20, 2000. 65 Fed. Reg. 50,746 (August 21, 2000). The citations in this paragraph are to the regulations as they existed from 1996 through 1998, when Boyd's case was being heard and considered by the ALJ and the Commissioner.

15

ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00-12.09. 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe, but does not reach the level of a listed disorder, then the ALJ must conduct a residual functional capacity assessment. 20 C.F.R. § 404.1520a(c)(3). The ALJ must also append a "standard document outlining the steps of [the § 4014.1520a] procedure" to the decision. 20 C.F.R. § 404.1520a(d).

Boyd argues that the ALJ did not apply the proper legal standard in evaluating his claim. Boyd appears to contend that Finding Eight, in which the ALJ states that "[t]he claimant's residual functional capacity for the full range of light work is not reduced by nonexertional limitations (Tr. 38)," conflicts with language elsewhere in the ALJ's findings indicating that Boyd's impairments were severe.[12] Boyd also appears to contend that the

_____

[12]  In his summary judgment brief in the district court proceeding, Boyd argued that Finding Eight was inconsistent with Finding Four. The magistrate judge found no conflict between the two findings. In Finding Four, the ALJ stated:

> Accordingly, the undersigned has completed and attached hereto a Psychiatric Review Technique form based on Listings 12.04 and the "B" criteria of functional limitations reflecting that claimant has moderate restrictions of [activities of] daily living, moderate difficulties in maintain [sic] social functioning, with never any deficiencies of concentration, persistence or pace and only once or twice having episodes of deterioration or decompensation in work or work-like activities.

The magistrate judge found that even if the limitations described in Finding Four were not "non severe," the ALJ clearly stated in

16

ALJ did not proceed beyond the finding that Boyd's impairments did not meet the requirements of listings 12.00-12.09, and did not conduct an analysis of what kinds of work Boyd would be able to perform.

In paragraph three of his decision, the ALJ stated that Boyd "has a combination of impairments that is severe." The ALJ considered whether the combination of impairments met or equaled impairments listed in 12.00-12.09, and found that they did not. The ALJ then performed a residual functional capacity assessment, concluding that while Boyd could not continue to perform his past work, Boyd had the residual functional capacity to perform jobs available in significant numbers in the national economy.

The ALJ's finding that Boyd had "a combination of impairments that is severe" did not foreclose a finding that Boyd had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding. Even if the degree of impairment is "severe," the regulations require an assessment of whether the impairment meets or exceeds the criteria of listed disorders in 12.00-12.09. 20 C.F.R. § 404.1520a(c)(2); Duncan v. Apfel, 2000 WL 1839196 (7th Cir. 2000)(noting ALJ's finding that although claimant's impairments were "severe," the

---

Finding Four that the limitations failed to satisfy listing 12.04, which made Findings Four and Eight not inconsistent. (Findings, Conclusions, and Recommendations of Magistrate Judge, p. 13). This court finds that the magistrate judge's analysis of a lack of inconsistency is supported by the evidence.

impairments did not satisfy the requirements of listing 12.04); Wittler v. Shalala, 46 F.3d 1130 (4th Cir. 1995) (same). The ALJ found that Boyd's impairments did not satisfy these criteria. The ALJ properly proceeded to conduct the residual capacity analysis. The analytical procedure and legal standard that the ALJ followed corresponds to the procedure and standard set out in 20 C.F.R. § 404.1520a. This court finds no error.

B. The Sufficiency of the Evidence

Boyd also contends that substantial evidence does not support the ALJ's conclusion that Boyd's capacity for light work was not reduced by his nonexertional limitations. Boyd raises two specific challenges: 1) that the hypothetical question the ALJ posed to the vocational expert did not accurately reflect Boyd's mental impairments, and 2) that uncontradicted evidence showed that Boyd's mental impairments limited his abilities to concentrate, follow instructions, deal with others, and function independently, all necessary abilities for work, to a degree that met or exceeded the listings. Boyd notes that the medical testimony at the hearing related only to his physical impairments, not his mental impairments, and that much of the evidence as to the extent and severity of his mental impairments was generated after the hearing.

The government acknowledges that the ALJ relied on the testimony of the vocational expert in determining that Boyd had the capacity to perform a range of jobs existing in significant numbers

18

in the national economy. The vocational expert offered her testimony in response to the ALJ's hypothetical question. This court has previously considered the question of under what circumstances a vocational expert's answer to a hypothetical question posed by an ALJ can provide substantial evidence supporting a denial of benefits. In Bowling v. Shalala, 36 F.3d 431 (5th Cir. 1994), this court stated:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

Id. at 436.

In the hypothetical question, the ALJ focused on Boyd's problems in memory and concentration:

> . . . . assume that I find that this man has such disturbance to the extent that his maybe, his concentration or memory is limited, so that if he does work, he's got to work in a simple, one or two-step-type jobs . . . can understand simple instructions, and . . . can stay on task a full eight hours, but he does not have to think about things too much, just repetitive-type work?

(Hearing Transcript, p. 39). However, the information received after the hearing showed that Boyd's nonexertional limitations were not limited to his memory or concentration. The post-hearing

19

evidence showed that Boyd was also significantly limited in his ability to deal with people, to deal with ordinary work stresses, and to function independently in daily activities. The post-hearing examination reports included findings that Boyd exhibited "borderline intellectual functioning"; suffered from panic attacks; and had serious impairment in social or occupational functioning, as reflected in a GAF score of 50. Dr. Ellis's psychological examination report concluded that Boyd exhibited "few adaptive coping skills or adequate social skills" and that severe anxiety limited his ability to perform any job responsibilities. Dr. Pepermintwala diagnosed Boyd with a "major depressive Disorder with Psychotic features."

The ALJ's hypothetical question did not incorporate many of the impairments or limitations described in these post-hearing examination reports, which were not contradicted by other testimony or records. The ALJ's hypothetical referred only to limited memory and concentration capabilities. The hypothetical cannot be said to "incorporate reasonably all disabilities of the claimant recognized by the ALJ." Bowling, 36 F.3d at 436.

The government argues that Boyd's representative had a fair opportunity to correct deficiencies in the hypothetical, and observes that Boyd's representative cross-examined the vocational expert. However, the holding in Bowling stated only that an ALJ may not rely on a hypothetical without giving the claimant an

20

opportunity to correct deficiencies in the question. It did not state that a party's failure to point out the problems in a defective hypothetical automatically salvages that hypothetical as a proper basis for a determination of non-disability. Bowling, 36 F.3d at 436. In this case, moreover, the major evidence concerning Boyd's mental impairments was not available to either the ALJ or to Boyd until after the hearing was completed. Boyd did not have a "fair" opportunity at the hearing to challenge the assumptions underlying the hypothetical question and to point to additional impairments.

The government argues that a remand is not necessary because "the medical evidence is replete with references to alcoholism and mental disorders associated with alcoholism." The government points out that alcohol addiction that materially contributes to disability cannot be a basis for an award of disability benefit and contends that because the severity of Boyd's mental impairments was affected by alcoholism, remand would be a "waste." However, as the government acknowledges, the ALJ did not base his decision on Boyd's alcohol use. The ALJ considered the evidence of Boyd's alcohol use and did not find it to be a factor material to the disability determination. The government's argument invites this court to assume that the ALJ would reach a result on remand that he declined to reach in the initial decision. This is

21

speculation that lies beyond the scope of appellate review. <u>See</u> <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).

The ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.' 'If the ALJ does not satisfy his duty, his decision is not substantially justified.'" <u>Newton v. Apfel</u>, 209 F.3d 448, 458 (5th Cir. 2000) (quoting <u>Ripley v. Chater</u>, 67 F.3d 552, 557 (5th Cir. 1995)). Because the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden to show that despite Boyd's impairments, Boyd could perform available work. We vacate and remand for the ALJ to determine Boyd's eligibility for disability benefits based on a record accurately reflecting all of Boyd's impairments and the degree of their severity.

## IV. CONCLUSION

The ALJ applied the correct legal standard, but his decision to deny benefits was not supported by substantial evidence. We therefore VACATE and REMAND.