IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-50768
Summary Calendar
_____


JOVITA OLGUIN,

                                             Plaintiff-Appellant,

versus

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

                                             Defendant-Appellee.


Appeal from the United States District Court for
the Western District of Texas
(USDC No. A-00-CV-288-SC)
_____

January 31, 2002
Before REAVLEY, DAVIS and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Jovita Olguin appeals from the Magistrate Judge's[1] finding that

the Administrative Law Judge (ALJ) based his decision on substantial evidence when he

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The parties consented to determination by the Magistrate Judge. 28 U.S.C § 636 (c)(1).

denied her claim for social security benefits. We AFFIRM, largely for the reasons stated in the Magistrate Judge's thorough opinion.

When the Commissioner of Social Security denies benefits, judicial review

'is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied. Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. In applying this standard, we may not re-weigh the evidence or substitute our judgment for that of the Commissioner.'[2]

The ALJ's decision in this case was supported by substantial evidence. Olguin argues that the ALJ's decision that her social and mental impairment was "slight" was in obvious error because a psychiatrist gave her a Global Assessment of Functioning score of 49. The ALJ's decision that her social limitations were not severe was supported by the evidence, however, because she visited with her mother and daughter weekly and was living with her boyfriend. Furthermore, the ALJ had the best opportunity to view Olguin's demeanor and interactions with others when she testified at the administrative hearing. The ALJ specifically relied on his first-hand observation of Olguin's full and alert participation in the hearing in concluding that her mental and emotional state "would not more than minimally interfere" with her ability to work.

With respect to Olguin's argument that the ALJ erred by relying on an admittedly

---

[2] Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001) (quoting Harris v. Apfel, 209 F.3d 413, 417 (5th Cir. 2000) (internal citations and quotations omitted)).

incomprehensible exchange in which the claimant was unable to name more than one river, it does not appear that the ALJ did rely on that exchange. The vocational expert stood by his opinion that Olguin could perform counter attendant jobs even when hypothetical questions incorporating Olguin's impairments were posed by Olguin's attorney.

Olguin also argues that the Commissioner did not meet its burden of showing she had residual functional capacity to perform light or sedentary work in light of her physical impairments, some of which the ALJ found to be severe. However, the ALJ had substantial evidence for his conclusion that the impairments, even in combination, would allow some gainful employment. The ALJ relied in part on testimony of the medical expert that Olguin's medical records did not support the existence of back and leg conditions that would render Olguin as unable to function as she claimed. The ALJ's own review of notes and evaluations prepared directly by Olguin's doctors also did not reveal a medical basis for many of her claims, or for the amount of pain she said she experienced. His decision was further supported by the range of daily activities, including some driving, grocery shopping, personal care, and spending time with grandchildren, that Olguin stated she was able to perform.[3]

---

[3] Olguin claims the ALJ "picked and chose" which evidence to rely on in determining her functional capabilities. Her brief points to an alleged inability to manage money, although the Function Report she filled out said she had not lost her ability to manage money. She also claims that she was unable to watch television for more than thirty minutes before having to lie down. This misstates her testimony, in which she told the ALJ that after standing for more than fifteen minutes she would need to rest by sitting and watching television for a while, "and then I just get

Finally, we note that the ALJ found that Olguin is able to perform not only a wide range of light jobs, but also her past relevant work as a folder presser.[4] The burden was on her in the administrative proceeding to prove an inability to perform past relevant work,[5] and the ALJ found that she had failed to do so. She has not attempted to explain why this particular finding was not supported by substantial evidence.

AFFIRMED.

---

up or I have to lay down on my side."

[4]It is clear from context that the ALJ's statement "the claimant is not able to perform her past relevant work as a folder presser, but not as a cleaner," contains a misplaced "not" in the first half of the sentence. Earlier in the opinion, the ALJ clearly stated, "claimant's residual functional capacity allows her to perform her past relevant work as a folder presser." This was the district court's reading of the ALJ's opinion as well, although Olguin's counsel continues to read this typo literally.

[5] Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000).