United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 23, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-10243
Summary Calendar

JIMMY B. NIX,

    Plaintiff-Appellant,

v.

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:04-CV-33

Before JOLLY, DAVIS and OWEN, Circuit Judges.

PER CURIAM:[*]

Jimmy B. Nix (Nix) applied to the Social Security Administration for disability insurance benefits under Title II of the Social Security Act, alleging disability due to arthritis, bad eyesight, and high blood pressure. Nix's application was denied on initial determination and on reconsideration. Nix then requested and received a hearing before an Administrative Law Judge (ALJ). The ALJ determined that Nix was not disabled within the meaning of the Social Security Act at any time on or before

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

September 30, 1999, the date his disability insured status[1] expired. The Appeals Council of the Social Security Administration remanded the case to the ALJ for clarification of Nix's residual functional capacity. After a supplemental hearing, the ALJ again determined that Nix was not disabled at any time through September 30, 1999. Upon the Appeals Council's denial of Nix's request for review, the ALJ's decision became the final administrative decision of the Commissioner of Social Security (Commissioner).

Nix filed suit in district court seeking review of the final administrative decision denying her disability claim.[2] A federal magistrate judge recommended that the district court affirm the Commissioner's decision and dismiss Nix's complaint with prejudice. The district judge adopted the magistrate judge's recommendation over Nix's objections, and affirmed the Commissioner's decision. Nix appeals.

We review the Commissioner's decision to deny benefits to determine whether that decision is supported by substantial evidence and whether the proper legal standards were applied.[3]

> Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. In applying this standard, we may

---

[1]Title II of the Social Security Act provides disability insurance for individuals whose employment is interrupted or prematurely terminated by incapacitating illness or injury. Claimants hold insured status over the period in which they accrued 20 quarters of social security coverage, as defined in 42 U.S.C. § 413, out of the last 40 quarters. 42 U.S.C. § 423(c)(1). Nix meets the disability insurance benefits requirements and is insured for disability benefits through September 30, 1999.

[2]"Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action" in a district court. 42 U.S.C. § 405(g).

[3]*Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

not re-weigh the evidence or substitute our judgment for that of the Commissioner. This court must affirm the Commissioner's determination unless this court finds that 1) the ALJ applied an incorrect legal standard, or 2) that the ALJ's determination is not supported by substantial evidence.[4]

Nix argues that the ALJ erred in failing to properly 1) assess the opinions of his treating physicians; 2) evaluate his allegations of disabling pain; and 3) establish an onset date of disability.

To qualify for disability insurance benefits, Nix must have met the definition of disability set forth in 42 U.S.C. § 423 on or before his disability insured status expired. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[5] A five-step inquiry set forth at 20 C.F.R. § 404.1520 determines whether a claimant meets this definition: 1) whether the claimant is doing substantial gainful activity; 2) whether the claimant has a severe impairment that significantly limits the physical or mental ability to perform basic work activities; 3) whether the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; 4) whether the impairment prevents a claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing other types of work. In this case, the ALJ determined that Nix was not disabled at the fifth step because he could perform light work.[6] For the reasons that follow, we affirm the

[4]*Id.*

[5]42 U.S.C. § 423(d)(1)(a).

[6]20 C.F.R. § 416.967(b)("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of doing light work, you must have the ability to do substantially all of these activities.").

3

decision to deny Nix's application for disability insurance.

The ALJ did not err in his assessment of the medical opinions of Dr. J.W. Chatwell and Dr. Enrique Rodriguez . On April 17, 2000 (approximately six months after Nix's disability insured status expired), Dr. Chatwell determined that Nix could not perform any standing or walking in the course of an eight-hour work day, could occasionally lift up to 20 pounds, and could never perform postural activities such as bending, kneeling, crouching, and stooping. On August 12, 2002 (approximately two years after Nix's disability insured status expired), Dr. Rodriguez determined that Nix could stand or walk for two hours of an eight-hour work day, could occasionally lift or carry up to ten pounds, and could never perform postural activities such as bending, stooping, and crouching, but could occasionally kneel. In their assessments, neither Dr. Chatwell nor Dr. Rodriguez indicated that their opinions were intended to describe Nix's condition before his disability insured status expired on September 30, 1999.

"A treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's activities are greater than those provided in the treating source's opinion."[7] "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[8] The record reveals that on November 26, 1999 (approximately two months after Nix's disability insured status expired), Nix sought treatment for a possible hernia because "[h]e lifted a lawn mower a few days ago and developed pain in the lower abdomen." Nix did not, however, complain at that

_____

[7]Social Security Ruling 96-2p; *see* 20 C.F.R. § 402.35(b)(1) ("[Social Security Rulings] are binding on all components of the Social Security Administration.").

[8]*Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

4

time of any other aches or pains. The record also reflects that on February 15, 2000 (approximately four months after Nix's disability insured status expired), Nix sought treatment after "load[ing] some cross-ties and crossbars." Nix testified that the crossties weighed between fifty and sixty pounds. Finally, a treatment record dated May 1, 2000 reported that Nix "is not working, but he and his wife are remodeling a house and [he is] apparently on his feet a lot." Because Nix's actual activities were greater than those provided in his treating physicians' opinions, the ALJ did not err in refusing to give the opinions controlling or significant weight.[9]

The ALJ applied the correct legal standards for evaluating Nix's alleged pain. Pain can constitute a disabling impairment.[10] "Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence."[11] Pain is disabling when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."[12] "[T]he law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints."[13] The ALJ fulfilled his obligation by expressly rejecting Nix's contention that his subjective pain was of a disabling nature. The ALJ stated, "[Nix's] complaints suggest a far greater degree of impairment than is established by the objective medical evidence alone for the period November 15, 1996 through September 30, 1999. Further, there are significant inconsistencies between his subjective complaints and the

---

[9]*See Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status.").

[10]*Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

[11]*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[12]*Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990).

[13]*Falco*, 27 F.3d at 163.

objective medical evidence." The ALJ then identified the inconsistencies and concluded that, "[Nix] exaggerated both the nature and the severity of his subjective complaints to the extent that he has alleged total disability prior to [September 30, 1999]." There is substantial evidence in the record supporting the ALJ's determination that Nix's pain was not disabling.

The ALJ did not fail to properly establish an onset date of disability. Social Security Ruling 83-20 (S.S.R. 83-20) provides the framework by which an ALJ is to determine the onset date of disability. Nix argues that the ALJ erred by inferring an onset date later than September 30, 1999, without the use of a medical advisor. Under S.S.R. 83-20, the disability onset date is "the first day an individual is disabled as defined in the Act and the regulations." In this case, the ALJ determined that Nix was not disabled. Because the ALJ did not find that Nix was disabled, no inquiry into an onset date was required.[14]

AFFIRMED.

---

[14]*See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required."); *Pesek v. Apfel*, No. 99-1632, 2000 WL 517893, at *3 (7th Cir. Apr. 14, 2000) ("In order to determine the onset date of a disability, Pesek must first establish that she is disabled."); *Webb v. Sec'y of Health & Human Servs.*, No. 93-2156, 1994 WL 50459, at *2 (10th Cir. Feb. 22, 1994) ("[T]he onset date relates to the date of *disability*. . . .Without a severe impairment, there can be no disability. [S.S.R. 83-20] does not apply."); *Schoen v. Bowen*, 1990 WL 33137, No. 88-3923, at *2 (9th Cir. Mar. 23, 1990) ("Because Schoen did not meet his initial burden of proving he was disabled from performing his prior work, it was unnecessary to determine the onset date of Schoen's alcoholism and SSR 83-20 was not relevant.").