# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 15, 2012

Lyle W. Cayce
Clerk

No. 11-30766

ZOLIA RICHARD, on behalf of Z.N.F.,

Plaintiff - Appellant

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:07-CV-989

Before HIGGINBOTHAM, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant, Zolia Richard, filed an application for disability benefits pursuant to Title XVI of the Social Security Act (the "Act") on behalf of her minor son, Z.N.F. After an ALJ denied her application, Richard sought review in the district court, and she now appeals the district court's order upholding the ALJ's decision. We affirm the district court's decision that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30766

Z.N.F.'s impairment failed to meet Listing 112.05(D)[1] and affirm also the district court's decision that Z.N.F.'s impairment was not the functional equivalent of the listing.

1. Facts and Proceedings

Z.N.F. was born in January 30, 2002. Soon after his birth, he began to display signs of developmental delays. On August 21, 2002, Richard filed an application for supplemental security income ("SSI") benefits under Title XVI alleging that Z.N.F. had a disability beginning on the date of his birth due to developmental delays. The Social Security Administration denied the application at the initial administrative determination on May 22, 2003. Richard requested and received a hearing before an ALJ (the "initial ALJ"). On June 9, 2005, the initial ALJ rendered a decision denying benefits, concluding that although Z.N.F. had not engaged in substantial gainful activity since the alleged onset date and has severe impairments, Z.N.F. had "not been under a disability at any time from the alleged onset date through the date of this decision."[2] On August 19, 2005, the Appeals Council vacated the initial ALJ's decision and remanded the case to another ALJ (the "second ALJ") on procedural reasons. A second hearing was held, and on December 28, 2006, the second ALJ

---

[1] Listing 112.05(D) states:

Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied. . . .

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function . . . .

20 CFR Pt. 202, Subpt. P, App.1.

[2] Specifically, the initial ALJ determined that Z.N.F.'s impairments (1) did not meet or medically equal Listing 112.05 and (2) did not functionally equal the listed impairments because he only had a marked limitation in attending and completing tasks.

2

issued a decision denying benefits. The second ALJ decision became the Commissioner's final decision when the Appeals Council denied review on April 6, 2007. Richard sought review before the United States District Court for the Western District of Louisiana, where the case was referred to a magistrate judge. On June 22, 2011, the district court adopted the Report and Recommendation of the magistrate judge upholding the Commissioner's denial of benefits. This timely appeal followed.

## 2. Standard of Review

We limit our review to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Perez*, 38 F.3d at 236 (internal quotation marks and citations omitted). Substantial evidence requires:

> [S]uch relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Johnson v. Bowen*, 864 F.2d 340, 343–344 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)); *see also Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) ("A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000))).

## 3. Listing 112.05(D)

Richard contends that Z.N.F. is disabled within the meaning of the Act and that the district court's decision to the contrary, adopting the magistrate's

No. 11-30766

Report and Recommendations, in turn affirming the second ALJ's decision, is not supported by substantial evidence. For a child under the age of eighteen, the Act defines disability as "a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i) (1997). For a child to be disabled under the meaning of the Act, the child must: (1) not be engaged in substantial gainful activity; (2) have an impairment that is "severe"; and (3) have an impairment that "meets, medically equals, or functionally equals" the impairments listed in the disability regulations. 20 C.F.R. § 416.924(a)–(d). The Commissioner concedes that Z.N.F. satisfies the first two steps of this analysis.

As for the final prong of this analysis, Richard argues that Z.N.F.'s impairment met Listing 112.05(D), which covers child mental retardation. 20 C.F.R. Part 404, Subpt. P, App. 1. However, the Commissioner contends that Z.N.F. failed to demonstrate that he met the Listing's general diagnostic description.

It is undisputed that Z.N.F. has a valid performance IQ score of 60 through 70. Prior to the initial ALJ's decision, Z.N.F. was evaluated by Dr. Richard Adams, who administered a Weschler Preschool and Primary Scale of Intelligence III test. Z.N.F. received a verbal IQ score of 90 (average range), a performance IQ score of 66 (extremely low range), and an overall full scale IQ score of 77 (borderline functioning). Dr. Adams also diagnosed Z.N.F. with disruptive behavior disorder. However, this score and an accompanying severe impairment alone are not sufficient to satisfy Listing 112.05(D). A claimant satisfies Listing 112.05(D) if (1) his impairment is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning;" and (2) he has a "valid verbal, performance, or full scale

4

No. 11-30766

IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* The first prong is sometimes called the "capsule" requirement or the general diagnostic description that applies to all of the Listing 112.05, while the second prong is one of several ways to satisfy the Listing's severity requirement. *See Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) ("[E]very mental disorder listing includes two independent components: a diagnostic description of the disorder and specific criteria measuring the disorder's severity.").

Addressing Z.N.F.'s intellectual functioning, the second ALJ explained that:

> Claimant's performance IQ of 66 does reveal some learning disability but not listing level in that he achieved a 90 in the verbal area. Claimaint is in occupation and physical therapy to help him with his development delays. Claimant was in special education and making strides to his goals (Exhibit 6E). He is functioning at age appropriate level in many of his activities of daily living and though he is delayed in some areas it is not listing level despite his performance IQ score.

The second ALJ had previously expressed at the end of the hearing the same concern, that Z.N.F. did not meet the "threshold of retardation."

This conclusion is supported by substantial evidence in the record. Despite Z.N.F.'s low performance IQ score, Dr. Adams did not diagnose Z.N.F. as mentally retarded. Dr. Adams noted in his report that although Z.N.F.'s performance score was "ostensibly valid," the "results may be a slight underestimate of his abilities" because Z.N.F. "was so impatient with some of the nonverbal tasks." Additionally, Dr. Adams explained that, "[o]verall functioning was within the borderline range although verbal functioning was actually within the average range" and "[Z.N.F.] appears capable of understanding information and has at least borderline abilities." *Id.* The record also shows that Z.N.F. responded age-appropriately to questions posed by the second ALJ. The district

court correctly held that the second ALJ's finding that Z.N.F. failed to satisfy Listing 112.05(D) is supported by substantial evidence.

4. Functional Equivalence

If the child's impairment does not medically meet Listing 112.05(D), the ALJ will still, pursuant to 20 C.F.R. § 416.924(a)–(d), perform a "functional equivalence" analysis in which it considers whether the applicant's impairment results in a "marked" limitation in two, or an "extreme" limitation in one, of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects (or "motor skills domain"); (5) caring for oneself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1), (d).

The second ALJ found that Z.N.F. had a marked limitation in "acquiring and using information" but found a "less than marked" or no limitation in each of the other domains.[3]  Specifically, the second ALJ, as affirmed by the district court, found that Z.N.F. had no limitation in moving about and manipulating objects and a less than a marked limitation in attending and completing tasks.

A. Attending and Completing Tasks

The second ALJ reasoned that Z.N.F. has less than a marked limitation in attending and completing tasks because:

> Consultative examiner opined that claimant seemed to have been inattentive and had difficulty focusing on assessment tasks (Exhibit 8F, page 2).  He is noted to need redirection in class and in testing but he is easily redirected and is not noted to be a problem in the classroom.

Although the record contains evidence of Z.N.F.'s limitations in his ability to attend and complete tasks, there is substantial evidence supporting the district

---

[3] Although vacated on procedural grounds, the initial ALJ found that Z.N.F. only had a marked limitation in attending and completing tasks and found a less than marked limitation or no limitation in each of the other domains.

court's conclusion, affirming the second ALJ, that Z.N.F.'s limitation is less than marked. In the same report where Dr. Adams discussed Z.N.F.'s impatience, distractibility, and impulsivity, he also explained that Z.N.F. was cooperative and friendly. Though it is hard to have Z.N.F. focus, he has shown improvement in his speech and development, and can have his behavior corrected with timeouts. Despite his occasional tantrums, his grandmother reported good behavior at home, and that he gets along well with his school teacher.

Ultimately, we will not "re-weigh the evidence or substitute our judgment for that of the Commissioner." *Boyd*, 239 F.3d at 704 (internal quotation marks and citation omitted). We affirm the district court's determination, adopting the magistrate's finding, that substantial evidence supported the second ALJ's decision that Z.N.F.'s limitation was less than marked.

B. Moving About and Manipulating Objects

The second ALJ's relevant analysis on the motor skills domain states: "Despite the consultative examiner's opinion that claimant had a marked limitation in this area there was no evidence that claimant had problems with this area. He was able to function in school and play age appropriately." The second ALJ's finding is not straightforward but we are constrained to conclude, affirming the district court's and magistrate judge's rulings, that it is supported by substantial evidence. Although Dr. Adams had opined that Z.N.F. had a marked limitation in this domain,[4] Dr. Adams also observed that Z.N.F. had "no obvious problems with motor coordination" during his evaluation. Dr. Adams, a psychologist, also explained that Z.N.F.'s poor performance on tasks requiring manipulation of objects "may be partly associated with impulsivity." At the hearing, when asked if he had "any trouble using either hand or arm to reach,

---

[4] Dr. Adams determined that Z.N.F. "[h]as a reported history of delayed motor skills. Did not perform well on tasks requiring manipulation of objects, but this weakness may be partly associated with impulsivity."

grip, or manipulate things," Z.N.F.'s grandmother responded that he did not other than his hand and leg being stiff when wakes up in the morning.[5] When he was almost four years old, Z.N.F. had trouble with fine motor skills and pre-writing but could pedal, catch, throw, kick a ball, hop, gallop, and hold a pencil and paint brush.[6] His records also show progress in his gross and fine motor skills after physical and occupational therapy.

Ultimately, the second ALJ, as affirmed by the magistrate judge and district judge, could discredit or disagree with Dr. Adams' opinion as long as it pointed to evidence that supports the contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The second ALJ justified its rejection of Dr. Adams's opinion by explaining tersely that Z.N.F. "was able to function in school and play age appropriately." *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (holding that an ALJ cannot reject a medical opinion without an explanation); *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980) ("An administrative law judge may not arbitrarily reject uncontroverted medical testimony." (citing *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417). Our

---

[5] Z.N.F.'s grandmother also testified at the hearing that Z.N.F. lacked coordination in his hands, had weakness on the right side of his body that caused his right leg to give out, lacked strength in the lower part of his legs, and had difficulty running, causing him to fall often. Another witness, Nancy Bailey Sheppard, testified that Z.N.F. had difficulty learning to walk.

[6] On the other hand, the administrative record also contained evidence of Z.N.F.'s general delay in motor development reporting: problems with mobility and balance when sitting, standing, and walking and with fine motor skills; an inability to roll into a seated position when almost a year old and episodes of tonic posturing of the arm before sleep attributed to a movement issue rather than seizures; a variety of problems moving about and manipulating objects; and problems with head control, overall motor control, and fine and gross motor skills.

caselaw does not permit us to substitute our judgment for that of the Commissioner, *id.*, and because the second ALJ's terse explanation is supported by substantial evidence, we affirm the district court.

5. Conclusion

Accordingly, we AFFIRM the district court's conclusion that Z.N.F. does not meet Listing 112.05(D) or its functional equivalent.