Julius **BAGWELL**, Jr., Plaintiff,

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. CIV.A.H–02–4443.**

United States District Court,
S.D. Texas,
Houston Division.

March 8, 2004.

Victor N. Makris, Attorney at Law, Bellaire, TX, for Julius Bagwell, Plaintiff.

Cheryl Latrice Chapman, Office of the General Counsel, Social Security Admin., Dallas, TX, for Jo Anne B. Barnhart, Defendant.

## MEMORANDUM AND ORDER

BOTLEY, United States Magistrate Judge.

Pending before the Court are Plaintiff Julius Bagwell Jr.'s ("Bagwell") and Defendant Jo Anne B. Barnhart's ("Commissioner") cross-motions for summary judgment. Bagwell appeals the determination of an Administrative Law Judge ("ALJ") that he is not entitled to receive Title II disability insurance benefits or Title XVI supplemental security income benefits. *See* 42 U.S.C. §§ 416(i), 423, 1382c(a)(3)(A). Having reviewed the pending motions, the submissions of the parties, the pleadings, the administrative record,

and the applicable law, this Court is of the opinion that Bagwell's Motion for Summary Judgment (Docket Entry No. 11) should be granted, the Commissioner's Motion for Summary Judgment (Docket Entry No. 14) should be denied, the ALJ's decision denying benefits be reversed, and the case be remanded pursuant to sentence four to the Social Security Administration ("SSA") for further proceedings.

## I. Background

Bagwell filed applications for disability insurance benefits and supplemental security income payments with the SSA on August 12, 1997, and April 25, 2000, respectively, alleging disability beginning on March 22, 1994, as a result of degenerative disc disease [1] and asthma.[2] (R. 15, 184–186). After being denied benefits initially and on reconsideration, Bagwell requested an administrative hearing before an ALJ to review the decision. (R. 149). A hearing was held on November 20, 1998, in Bellaire, Texas, at which time the ALJ heard testimony from Bagwell and Laurie McQuade Johnson [3] ("Johnson"), a vocational expert ("VE"). (R. 29–64). In a decision dated, February 16, 1999, the ALJ denied Bagwell's application for benefits. (R. 121–137). On March 17, 1999, Bagwell appealed the ALJ's decision to the Appeals Council of the SSA's Office of Hearings and Appeals. (R. 158). The Appeals Council, on June 15, 2001, remanded this case to an ALJ for further proceedings. (R. 169–170).

A second administrative hearing was held before an ALJ on February 6, 2002, in Bellaire, Texas, at which time the ALJ heard testimony from Bagwell, Ronald DeVere, M.D. ("Dr. DeVere"), a medical expert, and McQuade, a VE. (R. 65–118). In a decision dated March 1, 2002, the ALJ denied Bagwell's application for benefits. (R. 15–23). In the decision, the ALJ found that Bagwell had severe medically determinable impairments of degenerative disc disease and asthma. (R. 22). The ALJ determined, however, that Bagwell's impairments did not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4. (R. 22). The ALJ concluded that, although Bagwell could not perform his past relevant work as a truck driver, he could perform light work (i.e., ticket taker, library page, and order caller), with certain limitations, and that these jobs exist in significant numbers in the national economy. (R. 23).

On March 15, 2002, Bagwell appealed the ALJ's decision to the Appeals Council of the SSA's Office of Hearings and Appeals. (R. 9). The Appeals Council, on October 18, 2002, declined to review the ALJ's determination. (R. 7–8). This rendered the ALJ's opinion the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). Bagwell filed the instant action on November 26, 2002, contesting the Commissioner's denial of his claim for benefits.

## II. Analysis

### A. Statutory Bases for Benefits

SSI benefits are authorized by Title XVI of the Act and are funded by general tax

---

1. "Degenerative disease" is a disease characterized by the progressive impairment of the function of an organ or organs and not attributable to some cause such as an infection or a metabolic defect. See GOULD'S MEDICAL DICTIONARY 363 (4th ed.1979).

2. "Asthma" refers to recurrent attacks of paroxysmal dyspnea, with airway inflammation and wheezing due to spasmodic contraction of the bronchi. See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 163 (29th ed.2000).

3. The VE's name is "McQuade–Johnson" or "McQuade," instead of "McClay" as reflected in the first administrative hearing transcript. (R. 30, 56, 65, 156).

revenues. *See* SOCIAL SECURITY ADMINIS-TRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed.2001). The SSI Program is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. *See* 20 C.F.R. § 416.110. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled. *See Brown v. Apfel,* 192 F.3d 492, 495 n. 1 (5th Cir.1999); *see also* 20 C.F.R. § 416.335. The applicable regulation provides:

> When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.

20 C.F.R. § 416.335. Thus, the month following an application, here, September 1997, fixes the earliest date from which benefits can be paid. Eligibility for SSI payments, however, is not dependent on insured status. *See* 42 U.S.C. § 1382(a).

Social Security disability insurance benefits are authorized by Title II of the Act and are funded by Social Security taxes. *See also* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both *insured* and *disabled,* regardless of indigence. A claimant for disability insurance can collect benefits for up to twelve months of disability prior to the filing of an application. *See* 20 C.F.R. §§ 404.131, 404.315; *see also Perkins v. Chater,* 107 F.3d 1290, 1295 (7th Cir.1997). For purposes of Title II disability benefits, Bagwell was last insured on December 31, 1996. (R. 193). Consequently, to be eligible for disability benefits, Bagwell must prove that he was disabled prior to that date.

While these are separate and distinct programs, applicants seeking benefits under either statutory provision must prove "disability" within the meaning of the Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). Under both provisions, disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). Moreover, the law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI. *See Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

### B. *Standard of Review*

#### 1. *Summary Judgment*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reason-

able jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 189 (5th Cir.1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.,* 201 F.3d 570, 574 (5th Cir.2000). If there are no issues of material fact, the court shall review any questions of law *de novo. See Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Compania Mexicana de Aviacion, S.A. de C.V.,* 199 F.3d 796, 798 (5th Cir.2000).

### 2. *Administrative Determination*

■ Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir.2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson,* 309 F.3d at 272; *Brown,* 192 F.3d at 496.

■ When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir.2001) (citations omitted). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart,* 288 F.3d 212, 215 (5th Cir.2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *See Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir.2001). The court may not, however, reweigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Commissioner. *See Masterson,* 309 F.3d at 272. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson,* 309 F.3d at 272.

### C. *ALJ's Determination*

An ALJ must engage in a five-step inquiry to determine whether the claimant is capable of performing "substantial gainful activity," or is, in fact, disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. An individual who does not have a "severe impairment" will not be found to be disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. An individual who "meets or equals a listed impairment in Appendix 1"

of the regulations will be considered disabled without consideration of vocational factors. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. If an individual's impairment precludes performance of his past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir.2000); *accord Boyd,* 239 F.3d at 705. The claimant has the burden to prove disability under the first four steps. *See Myers,* 238 F.3d at 619. If the claimant successfully carries this burden, the burden shifts to the Commissioner in step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *See Masterson,* 309 F.3d at 272; *Greenspan,* 38 F.3d at 236. If the Commissioner is able to verify that other work exists in significant numbers in the national economy that the claimant can perform in spite of his or her existing impairments, the burden shifts back to the claimant to prove that he or she cannot, in fact, perform the alternate work suggested. *See Boyd,* 239 F.3d at 705. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See id.*

The mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan,* 954 F.2d 289, 293 (5th Cir.1992). An individual claiming disability benefits under the Act has the burden to prove that he suffers from a disability as defined by the Act. *See Newton,* 209 F.3d at 452; *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir.1990); *Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir.1988); *Cook v. Heckler,* 750. F.2d 391, 393 (5th Cir.1985). A claimant is deemed disabled under the Act only if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Shave v. Apfel,* 238 F.3d 592, 594 (5th Cir.2001); *accord Newton,* 209 F.3d at 452; *Crowley v. Apfel,* 197 F.3d 194, 197–98 (5th Cir.1999); *Selders,* 914 F.2d at 618; *see also* 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" is defined as work activity involving significant physical or mental abilities for pay or profit. *See Newton,* 209 F.3d at 452–53; *see also* 20 C.F.R. §§ 404.1572(a),(b), 416.972.

A medically determinable "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See Hames v. Heckler,* 707 F.2d 162, 165 (5th Cir.1983); *see also* 42 U.S.C. § 423(d)(3). "[A]n individual is 'under a disability, only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .' " *Greenspan,* 38 F.3d at 236 (quoting 42 U.S.C. § 423(d)(2)(A)). This is true regardless of whether such work exists in the immediate area in which the claimant resides, whether a specific job vacancy exists, or whether the claimant would be hired if he applied. *See Oldham v.*

*Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1981); *see also* 42 U.S.C. § 423(d)(2)(A).

In the case at bar, when addressing the first four steps, the ALJ determined:

1. The claimant met the disability insured status requirements of the Act on March 22, 1994, the alleged onset date of disability, and continued to meet them through December 31, 1996, but not thereafter.

2. The claimant has not engaged in substantial gainful activity during the relevant period under consideration.

3. The claimant has the following severe medically determinable impairments: degenerative disc disease and asthma.

4. The claimant's impairments, singly or in combination, do not meet or equal in severity the medical criteria for any impairment described in the Listings.

5. The testimony concerning subjective symptoms and functional limitations is not wholly credible or supported by the evidence as a whole insofar as the claimant alleges an inability to perform all work activity including a limited range of light work.

6. The claimant retains the residual functional capacity for light work. The claimant can sit for 8 hours in a day, and stand and walk for 4 to 6 hours in a day. He can lift and carry 10 pounds occasionally and 20 pounds frequently. Although he can occasionally climb, balance, and bend, he cannot do any stooping or crawling. Due to his history of asthma, the claimant must work in a climate-controlled environment reasonably free of noxious fumes, dust, smoke, and lint.

7. The claimant cannot do his past relevant work as a truck driver.

(R. 22–23). As to the fifth step, the ALJ concluded:

8. The claimant's vocational profile is that of a younger individual until [Date of Birth] 1997, when he became an individual closely approaching advanced age. The claimant has a high school education.

9. The claimant (considering age, education, skills, work history, and residual functional capacity) can perform the following occupations: ticket taker, library page, and order caller. Such jobs exist in a significant number in the regional and national economies.

10. Considering the claimant's medical-vocational profile within the framework of Rules 202.21 and 202.14 of Appendix 2, a finding of "not disabled" is warranted.

11. The claimant was not under a "disability," as defined in the Act, at any time through the date of this decision.

(R. 22–23).

This Court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied. *See Masterson,* 309 F.3d at 272; *Watson,* 288 F.3d at 215; *Myers,* 238 F.3d at 619; *Newton,* 209 F.3d at 452; *Greenspan,* 38 F.3d at 236; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). To determine whether the decision to deny Bagwell's claim for disability benefits is supported by substantial evidence, the court weighs the following four factors: (1) the objective medical facts; (2) the diagnoses and opinions from treating and examining physicians; (3) the claimant's subjective evidence of pain and dis-

ability, and any corroboration by family and neighbors; and (4) the claimant's age, educational background, and work history. *See Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir.1995); *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir. 1972)). Any conflicts in the evidence are to be resolved by the ALJ and not the court. *See Newton,* 209 F.3d at 452; *Brown,* 192 F.3d at 496; *Martinez,* 64 F.3d at 174; *Selders,* 914 F.2d at 617.

### D. *Issues Presented*

Bagwell contends that the decision of the ALJ is not supported by substantial evidence. Specifically, Bagwell claims that the ALJ erred by (1) setting his residual functional capacity at light work when the ALJ had adopted postural restrictions (*i.e.,* no stooping), which effectively precluded Bagwell from performing light and sedentary work because both require occasional stooping; and (2) failing to reconcile the VE's testimony that someone with Bagwell's limitations could perform the job of a library page with the description of that job contained in the Dictionary of Occupational Titles ("DOT").[4]

The Commissioner acknowledges that the ALJ found that Bagwell was unable to stoop; however, the Commissioner argues that the record supports a finding that Bagwell retained the ability to stoop on at least an occasional basis. Thus, the Commissioner argues he was capable of performing light work. The Commissioner also concedes that Bagwell is correct in pointing out that the DOT indicates that the job of library page requires frequent stooping. The Commissioner maintains that the remaining two jobs identified by

the ALJ (*i.e.,* ticket taker and order caller) are unaffected by even a complete inability to stoop, as the DOT indicates that the need to stoop is "not present" in either of the job of ticket taker or the job of order caller.

### 1. *Residual Functional Capacity*

■ Under the Act, a person is considered disabled:

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If a claimant demonstrates that he cannot perform his past relevant work, the Commissioner bears the burden of proving that his functional capacity, age, education, and work experience allow him to perform work in the national economy. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Masterson,* 309 F.3d at 272; *Watson,* 288 F.3d at 216; *Myers,* 238 F.3d at 619; *Greenspan,* 38 F.3d at 236. Once the Commissioner fulfills this burden by pointing out potential alternative employment, the claimant, in order to prevail, must prove that he cannot perform the alternate work suggested. *See Masterson,* 309 F.3d at 272; *Boyd,* 239 F.3d at 705; *Shave,* 238 F.3d at 594; *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000).

---

4. The Dictionary of Occupational Titles, published by the United States Department of Labor, is a comprehensive listing of job titles in the United States. It provides detailed descriptions of requirements for each job, including assessments of exertional level and reasoning ability necessary for satisfactory performance of the work.

To determine whether an applicant can return to a former job or, if never employed, can perform substantial work in the national economy, the regulations require the ALJ to evaluate the applicant's RFC. *See Carter v. Heckler,* 712 F.2d 137, 140 (5th Cir.1983) (citing 20 C.F.R. §§ 404.1561, 416.961). This term of art merely designates the ability to work despite physical or mental impairments. *See id.; see also* 20 C.F.R. §§ 404.1545, 416.945. "Residual functional capacity" combines a medical assessment with the descriptions by physicians, the applicant or others of any limitations on the applicant's ability to work. *See id.* When a claimant's RFC is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work. *See* 20 C.F.R. §§ 404.1561, 416.961. The testimony of a vocational expert is valuable in this regard, as "he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey,* 230 F.3d at 145; *see also Masterson,* 309 F.3d at 273; *Vaughan v. Shalala,* 58 F.3d 129, 132 (5th Cir.1995); *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986). In the absence of contrary evidence, the ALJ may properly rely on the testimony of a vocational expert in reaching a conclusion regarding a claimant's RFC to perform work available in the national economy. *See Masterson,* 309 F.3d at 273.

Moreover, under certain circumstances, the ALJ's application of the medical-vocational guidelines set forth in Appendix 2 of Subpart P of the Regulations, also referred to as the grids, without testimony from a vocational expert, is sufficient to assess whether a claimant is able to work or is disabled under the Act. *See Heckler v. Campbell,* 461 U.S. 458, 467, 470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). As the Supreme Court explained in *Campbell:*

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Id.* at 461–62, 103 S.Ct. 1952 (footnotes omitted). The Court elaborated:

> Each of these four factors is divided into defined categories. A person's ability to perform physical tasks, for example, is categorized according to the physical exertion requirements necessary to perform varying classes of jobs—*i.e.,* whether a claimant can perform sedentary, light, medium, heavy, or very heavy work. 20 C.F.R. § 404.1567. Each of these work categories is defined in terms of the physical demands it places on a worker, such as the weight of objects he must lift and whether extensive movement or use of arm and leg controls is required. *Ibid.*

*Id.* at 462 n. 3, 103 S.Ct. 1952.

Under the regulations, impairments can be either exertional or nonexertional. *See Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000). Impairments are classified as exertional if they affect the claimant's ability to meet the strength demands of jobs. *Id.* The classification of a limitation as exertional is related to the United States De-

partment of Labor's classification of jobs by various exertional levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. *See id.; see also* 20 C.F.R. § 404.1569a(b). All other work-related limitations and restrictions (mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, and environmental restrictions) are classified as nonexertional. *See Sykes,* 228 F.3d at 263; *see also* 20 C.F.R. § 404.1569a(c); SSR 96–9p, 1996 WL 374185, at *5 (S.S.A. July 2, 1996).

In evaluating RFC, the Fifth Circuit has looked to SSA rulings ("SSR"). The Social Security Administration's rulings are not binding on this Court, but they may be consulted when the statute at issue provides little guidance.[5] *See Myers,* 238 F.3d at 620 (citing *B.B. ex rel. A.L.B. v. Schweiker,* 643 F.2d 1069, 1071 (5th Cir. 1981)). In *Myers,* the Fifth Circuit relied on SSRs addressing residual functional capacity and the interplay of exertional and nonexertional factors:

> First, SSR 96–8p provides that a residual functional capacity (RFC) "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." "However, without the initial function-by-function

assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . ." RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. "Each function must be considered separately." "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Id.* (quoting 61 Fed.Reg. 34474–01 (July 2, 1996)). The court also noted that SSR 96–9p defines exertional capacity as the aforementioned seven strength demands and requires that the individual's capacity to do them on a regular continuing basis be stated. *See id.* Thus, to determine that an applicant can do a given type of work, the ALJ must find that the applicant can meet the job's exertional and nonexertional requirements on a sustained basis and can maintain regular employment. *See Watson,* 288 F.3d at 218; *Singletary v. Bowen,* 798 F.2d 818, 821 (5th Cir.1986); *Carter,* 712 F.2d at 142 (citing *Dubose v. Mathews,* 545 F.2d 975, 977–78 (5th Cir.1977)).

■ When a claimant suffers only exertional impairments and an ALJ's findings of residual functional capacity, age, education, and previous work experience coincide with the grids, the Commissioner may rely exclusively on the medical-voca-

---

5. While SSRs do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSR "binding on all components of the Social Security Administration." *See* 20 C.F.R. § 402.35(b)(1).

"These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] has adopted." *Id.*

tional guidelines to determine whether work exists in the national economy which the claimant can perform. *See Newton,* 209 F.3d at 458 (citing *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir.1987); 20 C.F.R. § 404.1569a(b)). Nevertheless, use of the grid rules is appropriate only when it is established that the claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his or her residual functional capacity. *See Crowley,* 197 F.3d at 199; *accord Watson,* 288 F.3d at 216; *Loza v. Apfel,* 219 F.3d 378, 398 (5th Cir.2000); *Newton,* 209 F.3d at 458. If the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that suitable jobs exist in the economy. *See id.* Therefore, before applying the grids, it must be determined whether nonexertional factors, such as mental illness, significantly affect a claimant's RFC. *See Loza,* 219 F.3d at 399; *Newton,* 209 F.3d at 459.

 In the case at bar, there are voluminous medical records detailing treatment Bagwell has received for back pain and asthma symptoms. (R. 458, 487–489). In her decision, the ALJ described the pertinent records that substantiate Bagwell's severe medically determinable impairments of degenerative disc disease and asthma. (R. 16–21). Because the parties' dispute is not centered around the medical records, there is no need for the Court to reiterate these records.

Dr. DeVere, the medical expert at the second administrative hearing, reviewed Bagwell's medical records and testified that Bagwell's asthma had been stable since 1996, requiring only routine visits to the doctor. (R. 94, 661). Moreover, a 1998 pulmonary function study showed only a very mild obstruction. (R. 94–95, 467). According to Dr. DeVere, Bagwell did not meet the requirements of Listing 3.03, which addresses asthma, because he neither had asthma attacks occurring at least once every two months and requiring physician intervention, nor did he have the required level of pulmonary decomposition. (R. 94–97).

With respect to Bagwell's lower back pain, Dr. DeVere testified that Bagwell failed to meet Listing 1.05(C),[6] which addresses lumbar radiculopathy, because he did not have motor or reflex loss. (R. 97–98, 102–103, 662). Bagwell's motor strength had been repeatedly described as 5/5, which was normal. (R. 20, 487–489, 662).

In determining Bagwell's RFC, the ALJ relied upon John Anigbogu's, M.D. ("Dr.Anigbogu"), medical assessment of Bagwell's abilities to do work-related activities. (R. 661–666). Dr. Anigbogu opined that Bagwell could lift and carry from 30 to 40 pounds occasionally, and 25 pounds frequently. (R. 665). He stated that Bagwell could stand and walk for about 2 hours in an 8–hour day. (R. 665). Bagwell's ability to sit was not affected. (R. 665). Dr. Anigbogu further stated that Bagwell could occasionally climb, and balance but never stoop, crouch, kneel, or crawl. (R. 666). The ALJ concluded that "based solely on the objective medical evidence of record, it appears that the claimant retains the residual functional capacity for a limited range of light work as specified by Dr. Anigbogu." (R. 19). Thus, in his decision, the ALJ made the following

---

**6.** The ALJ also found that Bagwell did not meet or equal Listing 1.04, which became effective February 19, 2002, because he did not have motor loss accompanied by sensory or reflex loss. (R. 18–19). Moreover, there was no evidence that he was unable to ambulate ineffectively. (R. 19).

findings regarding Bagwell's functional limitations:

> The Administrative Law Judge finds that the claimant's impairments do not preclude him from engaging in light work. The claimant can sit for 8 hours in a day, and stand and walk for 4 to 6 hours in a day. He can lift and carry 10 pounds occasionally and 20 pounds frequently. Although he can occasionally climb, balance, and bend, he cannot do any stooping or crawling. Due to his history of asthma, the claimant must work in a climate-controlled environment reasonably free of noxious fumes, dust, smoke and lint.

> \* \* \* \* \* \*

> The claimant retains the residual functional capacity for light work. The claimant can sit for 8 hours in a day, and stand and walk for 4 to 6 hours in a day. He can lift and carry 10 pounds occasionally and 20 pounds frequently. *Although he can occasionally climb, balance, and bend, he cannot do any stooping or crawling.* Due to his history of asthma, the claimant must work in a climate-controlled environment reasonably free of noxious fumes, dust, smoke and lint.

(R. 20, 23) (emphasis added).

The ALJ's RFC finding is internally inconsistent to the extent she states Bagwell can "occasionally ... bend" but "cannot do any stooping." (R. 20, 23). It is unclear what distinction the ALJ intended between the ability to bend and stoop. A review of the social security regulations and rulings does not bear out a distinction between the two terms. Indeed, SSR 83–14 defines "stooping" as "bending the body downward and forward by bending the spine at the waist." 1983 WL 31254, at \*2 (S.S.A. 1983). Additionally, SSR 85–15 provides that

> [s]tooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.

1985 WL 56857, at \*7 (S.S.A.1985). Because the regulations and rulings do not delineate a distinction between the terms "bend" and "stoop," it appears that the ALJ's RFC finding that Bagwell could occasionally bend but never stoop is contradictory on its face.

Similarly, the ALJ fails to provide reasoning as to how Bagwell could perform light work when he is precluded from stooping. The physical exertional requirements for light work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). SSR–83–14 further provides that "to perform substantial-

ly all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch [bend both legs and spine] and would need to stoop [bend forward from waist] only occasionally .... " If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." 1983 WL 31254, at *2.

Finally, 96–9p, addressing postural limitations, explains that

[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

1996 WL 374185, at *8. Contrary to Bagwell's contention, SSR 96–9p does not compel a finding of disability. Instead, the ruling provides that an ALJ should consult a VE to determine a claimant's RFC when the claimant is limited by an inability to stoop. *See Lauer v. Apfel,* 169 F.3d 489, 492 (7th Cir.1999); *Sarabia v. Apfel,* 152 F.3d 929, No. 97–56166, 1998 WL 382839, at *1 (9th Cir. May 26, 1998).

The Commissioner contends that, despite the ALJ's conclusion that Bagwell cannot stoop, the record supports the Commissioner's contention that Bagwell retained the ability to stoop on at least an occasional basis. *See* Docket Entry No. 13. While this argument may be factually correct, the ALJ did not articulate this view in her decision. *See Securities & Exch. Comm'n v. Chenery Corp.,* 332 U.S.

194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) ("a simple but fundamental rule of administrative law ... is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency"); *accord Butler v. Barnhart,* 353 F.3d 992, 1002 n. 5 (D.C.Cir.2004). The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council. *See Newton,* 209 F.3d at 455. In this instance, the ALJ twice stated in her decision that Bagwell "cannot do any stooping." (R. 20, 23). Thus, the Commissioner's observation regarding the record evidence is not germane.[7]

In sum, the ALJ failed to reconcile the inconsistencies in her RFC finding that Bagwell could occasionally bend but never stoop. The judiciary can scarcely perform its assigned review function without some indication of the ALJ's reasoning on such crucial particulars. As such, substantial evidence does not support the ALJ's determination that Bagwell is capable of performing light work.

### 2. *Improper Reliance on Testimony of Vocational Expert*

#### a. *Incomplete Hypothetical*

■ At the hearing, the ALJ failed to formulate a hypothetical question for the VE that encompassed all of Bagwell's recognized limitations. The ALJ posed the following question to the VE:

Q: Okay. Let's see—my next hypothetical question is going to be an individual who could sit for eight hours.

---

7. To the extent the Commissioner appears to question the propriety of the ALJ's findings, the proper vehicle to rectify flawed findings is through a request for remand under sentence four.

Stand and walk for approximately four to six hours—but at least two hours and can lift 25 pounds frequently, 40 paid (sic)—40 pounds occasionally. And, can bend on an occasional basis. And, occasionally claim and balance. Again, I'm going to use as a precaution the climate controlled environment. Would—obviously the past work does not—is not viable. Is there other unskilled work that would fit the criteria I gave you?

A: That hypothetical ma'am is most closely associated with the performance of light work. So, work at the light, unskilled level that is administratively noticed would be available.

Q: All right. In existence—now, can you give me some examples?

A: Certainly. This is the point of reference that base exists between 150 and 250,000 in the local, regional economy. And, examples of work that satisfy your hypothetical may include a ticket taker, library page [phonetic], order caller—[INAUDIBLE] representative sampling.

Q: Okay.

A: And, that base is eroded by approximately 30 percent because of your requirements to—

Q: Atmospheres?

A: —yes.

(R. 113–114). The hypothetical incorrectly advised the VE that Bagwell can "bend on an occasional basis" and failed to inform the VE that Bagwell cannot stoop.

A hypothetical question to a VE is deemed defective and in error unless (1) the assumptions reasonably incorporate all of the disabilities recognized by the ALJ, and (2) the claimant is afforded the opportunity to correct deficiencies in the ALJ's question. *See Boyd*, 239 F.3d at 707;

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994). Part one of the test is not met here because the ALJ's hypothetical question to McQuade did not include all of Bagwell's postural limitations—*i.e.*, no stooping. As the first prong of the test is not met, the second prong need not be addressed. *See Boyd*, 239 F.3d at 707 (noting that *Bowling* did not hold that a party's failure to point out the problems in a defective hypothetical automatically salvages that hypothetical as a proper basis for a determination of non-disability). Only where the testimony by the VE is based on a correct account of a claimant's qualifications and restrictions, may an ALJ properly rely on the VE's testimony and conclusion. *See Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir.1995). Unless there is evidence in the record to adequately support the assumptions made by a VE, the opinion expressed by the VE is meaningless. *See Bowling*, 36 F.3d at 436.

■ The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy her duty, her decision is not substantially justified. *See Boyd*, 239 F.3d at 708 (citing *Newton*, 209 F.3d at 458; *Ripley*, 67 F.3d at 557). Where the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry her burden to show that despite the claimant's impairments, the claimant can perform available work. *Id.* In the absence, as here, of clear testimony from the VE, or other credible evidence in the record that jobs existed in sufficient numbers in the national economy to accommodate all of Bagwell's postural limitations, substantial evidence to support the ALJ's finding of no disability is lacking, and the Commissioner has failed to meet her burden of proof on this issue. As such, this case should be remanded for an ALJ to obtain a competent and credible evaluation

of the availability and existence of jobs in the national and local economy that Bagwell can perform in light of his inability to stoop.

### b. *Conflict Between VE's Testimony and the Dictionary of Occupational Titles*

■ Bagwell argues that the ALJ erred by relying on VE testimony regarding other work that Bagwell could perform, contending that the VE's testimony was in conflict with the DOT and, thereby, in violation of SSR 00–4p. Specifically, the VE testified that three jobs were within Bagwell's functional capacity—ticket taker, library page, and order caller. As set forth above, the ALJ concluded that Bagwell could never stoop. (R. 20, 23). Bagwell correctly points out that the job of library page, as described in the DOT, requires frequent stooping and kneeling. *See Dictionary of Occupational Titles,* § 249.687–014 PAGE (4th ed.1991). Thus, the job of library page has nonexertional requirements outside of Bagwell's RFC. Despite such a patent inconsistency, the ALJ neither recognizes or seeks to reconcile the conflict between the VE's testimony and the DOT.

At step five, the burden shifts to the ALJ to prove that other work exists in significant numbers in the national economy that the claimant can perform. *See* 20 C.F.R. § 404.1520(f). In Social Security proceedings, the Commissioner routinely takes administrative notice of job information contained in DOT when determining whether work exists in significant numbers in the national economy. *See Sykes,* 228 F.3d at 269; *Gibson v. Heckler,* 762 F.2d 1516, 1518 n. 2 (11th Cir.1985); *see* 20 C.F.R. § 404.1566(d)(1); SSR 00–4p (S.S.A. Dec. 4, 2000). If there is a conflict between a VE's testimony and the DOT

regarding jobs that a claimant can perform, SSR 00–4p instructs as follows:

> Occupational evidence provided by a VE ... generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE ... evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE ... evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE ... is reasonable and provides a basis for relying on the VE ... testimony rather than on the DOT information.

SSR 00–4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

When the conflict between the VE's testimony and the DOT is implied or indirect, the Fifth Circuit has held that an ALJ may rely on a VE's testimony "provided that the record reflects an adequate basis for doing so." *See Carey,* 230 F.3d at 146. Thus, if substantial evidence supports the VE's opinion, the court may affirm the Commissioner, irrespective of the claimed conflict between the DOT descriptions and the VE's specific testimony. The Fifth Circuit has not yet addressed squarely the related but separate question of whether the Commissioner's decision denying benefits lacks substantial evidentiary support if based on a VE's testimony that directly and obviously conflicts with the DOT's description of non-exertional and/or skill levels required for particular jobs. Moreover, in *Carey,* the Fifth Circuit carefully

distinguished the indirect conflict involved there from direct and obvious conflicts. The Fifth Circuit identified the latter as existing "when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT" and, to a less obvious extent, "when the vocational expert's testimony creates a conflict or discrepancy between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions." *Id.* at 146. Because the Fifth Circuit so carefully distanced the rule it established in *Carey* from situations involving direct conflicts, an inference can be drawn that a more stringent, less deferential rule might apply when the VE's testimony directly and obviously conflicts with DOT job descriptions.

Here, the VE's testimony that an individual with Bagwell's functional capacity could perform the job of library page is in direct conflict with the DOT job description of library page as requiring frequent stooping. Neither the VE nor the ALJ recognized or discussed the conflict between the VE's testimony and the DOT. Likewise, neither the VE nor the ALJ articulated plausible reasons for finding the VE's testimony more credible under the circumstances. Independent review of the administrative record discloses no substantial evidence that Bagwell can perform jobs, such as a library page, requiring frequent stooping. While the other two jobs suggested by the VE do not require frequent stooping, the VE's testimony does not distinguish as to each job whether work exists in significant numbers in the national economy for the particular job. (R. 114). Thus, there is insufficient evidence demonstrating that, absent the library page job, work that Bagwell could perform exists in significant numbers in the national economy. Consequently, the Commissioner did not carry her burden at Step five of the sequential evaluation process to show by substantial evidence that Bagwell is capable of performing gainful employment that exists in substantial numbers in the national economy. Therefore, remand is appropriate.

### III. *Conclusion*

Accordingly, Bagwell's Motion for Summary Judgment is **GRANTED,** the Commissioner's Motion for Summary Judgment is **DENIED,** and the case is **REVERSED** and **REMANDED,** pursuant to "sentence four" of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to the Commissioner for a new hearing.

### FINAL JUDGMENT

In accordance with the Memorandum and Order issued this day, it is hereby

**ORDERED** that Plaintiff Julius Bagwell, Jr.'s Motion for Summary Judgment (Docket Entry No. 11) is **GRANTED.** Further, it is

**ORDERED** that the Defendant Jo Anne B. Barnhart's, Commissioner of the Social Security Administration ("Commissioner"), Motion for Summary Judgment (Docket Entry No. 14) is **DENIED.** It is finally

**ORDERED** that this case is **REVERSED AND REMANDED** to the Commissioner, pursuant to "sentence four" of the Social Security Act, 42 U.S.C. § 405(g).

This is a **FINAL JUDGMENT.**