# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-20766
Summary Calendar

ERNEST S ZIMMERMAN

Plaintiff-Appellant

v.

MICHAEL J ASTRUE, COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-07-00345

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Ernest Zimmerman ("Zimmerman") appeals from the district court's approval of the decision of an administrative law judge ("ALJ") that he is not disabled within the meaning of the Social Security Act. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Zimmerman asserts that he became disabled and unable to work in December 2003 due to chronic pain, obesity, and depression. He applied for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382 ("the Act"). After the Social Security Administration denied his claim, Zimmerman obtained a hearing before an ALJ. At the hearing, evidence showed that Zimmerman's weight was between 370 and 500 pounds; he had chronic back and joint pain related to his obesity; he sought treatment for pain on several occasions in 2004, 2005, and 2006; his pain improved with medication; and he was depressed and had attempted suicide in February 2004. Scans of his back in 2004 showed slight but not severe disc problems. There was conflicting evidence from several sources—including treating physicians, examining physicians, non-examining experts, medical records, and Zimmerman's own testimony—concerning the degree to which Zimmerman's pain and depression limited his ability to move, perform daily activities, and interact with others.

After considering the evidence, the ALJ found that Zimmerman's impairments, though severe, did not render him disabled within the meaning of the Act because a significant number of jobs existed that Zimmerman could still perform. A district court accepted a magistrate judge's ruling affirming the ALJ's decision, and Zimmerman appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

Our review is limited to determining (1) whether the ALJ's decision was supported by substantial evidence in the record, and (2) whether the ALJ used proper legal standards to evaluate the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

(internal quotation marks omitted). This court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute our judgment for that of the [ALJ], even if the evidence preponderates against the [ALJ's] decision." Id. (internal quotation marks omitted).

## III. DISCUSSION

To be entitled to Social Security benefits, a claimant must show that he is disabled within the meaning of the Act. Villa v. Strickland, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The ALJ must conduct a five-step process when examining a claim of disability:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520(a)-(e) (describing the five steps). "A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

Here, at steps one and two, the ALJ found that Zimmerman was not engaging in a substantial gainful activity and that Zimmerman had several severe impairments: sleep apnea, degenerative disc disease, obesity, depression,

and personality disorder. At step three, the ALJ found that these impairments did not meet or equal the severity of any impairment in the Appendix 1 listings in the regulations. See 20 C.F.R. Pt. 404, Subpt. P. App. 1. At step four, the ALJ found that Zimmerman could not perform his past relevant work. However, at step five, the ALJ determined that Zimmerman's residual functional capacity ("RFC") included the ability to do low-stress, unskilled work and that jobs consistent with his RFC existed in significant numbers in the local and national economies. On appeal, Zimmerman claims that the ALJ's analysis was deficient in several respects.

A.      Obesity and obesity-related complications

Zimmerman first argues that in determining his RFC at step five, the ALJ failed to properly consider Zimmerman's obesity and obesity-related complications, as required by Social Security Ruling 02-01p (2002). This argument is without merit. The ALJ acknowledged that Zimmerman was obese and that his obesity was a severe impairment. The ALJ also emphasized the importance of considering Zimmerman's obesity, stating that Zimmerman's back pain was likely secondary to his obesity and that "the combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." In addition, the ALJ discussed Zimmerman's allegations that he could not stand, sit, or walk for long periods of time, and the opinion of Zimmerman's treating physician, Dr. Michael Taylor, that Zimmerman had severe limitations. Based on these considerations, many of which were related to Zimmerman's obesity, the ALJ found that Zimmerman's RFC was significantly limited. He found that Zimmerman could perform light work but not medium or heavy work; would be "precluded from climbing, working at unprotected heights and on or about moving or dangerous equipment or machinery"; could lift no more than twenty pounds; and could stand or walk

for six hours in a work day and sit for at least two hours, "compromised by the need to alternate with sitting/standing at will in an 8 hour workday."

The ALJ's conclusion that Zimmerman's obesity was not completely debilitating was supported by several pieces of evidence in the record. For example, the State Agency Medical Consultant, Dr. Bonnie Blacklock, concluded based on Zimmerman's medical records that Zimmerman could occasionally carry fifty pounds and could sit or stand for six hours in an eight-hour workday. In addition, Dr. Hanley examined Zimmerman and reported that Zimmerman had full motor strength in all his muscle groups. Moreover, a July 2004 MRI revealed only slight disc degeneration, and a November 2004 computed tomography scan of Zimmerman's spine showed early disc degeneration but no bulge or herniation. Also, records showed that Zimmerman's pain had improved with medication on several occasions. Finally, Zimmerman testified that he was able to perform daily tasks such as shopping and carving ornate wooden canes.

Zimmerman contends that the ALJ should have considered the fact that Zimmerman walks with a cane. However, a vocational expert testified that the use of a cane would not have prevented Zimmerman from performing the types of jobs he identified as consistent with Zimmerman's RFC. Zimmerman also maintains that the ALJ should have identified precisely which of the Zimmerman's limitations were caused by Zimmerman's obesity. However, Zimmerman cites no authority suggesting that when considering a claimant's limitations, the ALJ must describe precisely which medical condition triggered each limitation. Zimmerman further contends that the ALJ improperly relied on Zimmerman's failure to lose weight. However, even assuming that such reliance would have been improper, there is no evidence that the ALJ actually relied on Zimmerman's failure to lose weight to find that obesity-related impairments should not be considered; to the contrary, the record shows that the ALJ did consider Zimmerman's obesity-related impairments.

In sum, the ALJ properly considered Zimmerman's obesity in his RFC analysis.

B.     Opinion of Zimmerman's treating physician

Zimmerman's second argument is that the ALJ improperly disregarded the opinion of  Dr. Taylor, his treating physician, without  sufficient justification. Dr. Taylor opined that Zimmerman was unable to lift or carry more than ten pounds; could stand, walk, or sit less than two hours during an eight-hour work day; and could not twist, stoop, bend, crouch, squat, or climb ladders or stairs. Dr. Taylor also stated that Zimmerman's pain was sufficiently severe to prevent Zimmerman from performing even low-stress jobs.  The ALJ found Dr. Taylor's opinion was "unsupported by the objective clinical evidence" and was "inconsistent with the evidence considered as a whole," and he gave it little weight.

Zimmerman bases his argument on Newton v. Apfel, in which we reversed an ALJ's decision where the ALJ rejected the opinion of a treating physician without performing an analysis based on the six factors listed in 20 C.F.R. § 404.1527(d)(2).[1]   209 F.3d 453, 458 (5th Cir. 2000).  However, Newton is distinguishable.   In Newton, the ALJ "summarily rejected the opinions of Newton's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." Id. at 458. We emphasized that Newton did not involve  "competing first-hand medical evidence," nor did it involve "the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." Id. Here, in contrast to Newton, competing first-hand medical evidence was present that

---

[1] These factors are (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the relevant evidence supporting the opinion,  (4) the consistency of the treating physician's opinion with the record as a whole, (5) whether the opinion is that of a specialist, and (6) "other factors which tend to support or contradict the opinion."  20 C.F.R. § 404.1527(d)(2).

contradicted Dr. Taylor's testimony. That evidence, discussed in detail above, included Dr. Hanley's examination of Zimmerman that revealed full motor strength, MRIs indicating only mild problems, records indicating that pain medication was effective, and Zimmerman's own testimony about his everyday activities. Moreover, we note that the ALJ did cite and list the six factors, and his discussion demonstrates that he considered several of the factors—he noted the evidence supporting and opposing the opinion, the inconsistency of the opinion with the record as a whole, and the fact that Dr. Taylor had no vocational expertise. Thus, we find no error in the ALJ's decision not to credit Dr. Taylor's opinion. Cf. Spellman v. Shalala, 1 F.3d 357, 364-65 (5th Cir. 1993) (holding that it was proper to reject a treating physician's opinion that the claimant could not perform sedentary work, because the opinion was inconsistent with evidence of the claimant's everyday activities and with medical records).

## C.    Zimmerman's credibility

Zimmerman argues that the ALJ's finding that Zimmerman's allegations about his impairments were "not totally credible" was unsupported. He cites as evidence of his credibility numerous pieces of evidence in the record suggesting that he did have significant pain and decreased range of motion, as well as Dr. Taylor's opinion.

We have previously noted that "[w]hile an ALJ must consider an applicant's subjective complaints of pain, he is permitted to examine objective medical evidence in testing the applicant's credibility. He may find, from the medical evidence, that an applicant's complaints of pain are not to be credited or are exaggerated." Johnson v. Heckler, 767 F.2d 180, 182 (5th Cir. 1985). Here, the ALJ explained why the objective evidence discussed above—Zimmerman's testimony about his daily activities, combined with medical evidence concerning his strength, the severity of his spinal problems,

and the effectiveness of his medications—undermined the credibility of Zimmerman's contention that his pain was completely debilitating. In addition, as the district court noted, two State Agency Medical Consultants opined that Zimmerman was not "fully credible." Thus, we find the ALJ's credibility determination was supported by substantial evidence.[2]

D.    Mental impairments

Zimmerman next asserts that the ALJ failed to evaluate Zimmerman's mental impairments in making the RFC determination. The ALJ determined that Zimmerman suffered from depression that caused mild difficulties with daily activities, social functioning, concentration, and persistence. The ALJ also discussed Zimmerman's February 2004 suicide attempt but noted that in March 2004, a treatment note indicated that Zimmerman was feeling better and denied any suicide ideation. The ALJ took these limitations into account in determining that Zimmerman's RFC was limited to work requiring "limited public contact and low stress unskilled tasks due to depression."

Zimmerman asserts that the ALJ failed to properly consider the report of Dr. Erick Lenert, a psychologist who diagnosed Zimmerman with depression and antisocial personality disorder and assigned him a low global assessment of functioning ("GAF") score. Dr. Lenert noted that Zimmerman had a somewhat depressed mood, a flat affect, marginal judgment, fair insight, and adequate abstract thinking. The ALJ noted Dr. Lenert's diagnoses and GAF score but found them inconsistent with Dr. Lenert's mild description of Zimmerman's impairments. The ALJ's conclusion was supported both by Dr. Lenert's description of Zimmerman and by the testimony of a non-examining medical expert, Dr. Ashok Khushalani. Dr. Khushalani testified that Zimmerman was

---

[2] We also reject Zimmerman's argument that the ALJ impermissibly relied on Zimmerman's history of substance abuse in making his credibility determination because we see no evidence of such reliance.

"reasonably well stabilized" by his medication, did not have major depression, and had only mild restrictions on daily living, social functioning, and concentration due to his depression. He also opined that Zimmerman had no limitations in his ability to understand and carry out short, simple instructions.

In sum, although there was some conflicting evidence, the ALJ's conclusions about Zimmerman's mental impairments was supported by the substantial evidence provided by Dr. Khushalani and by Dr. Lenert's specific findings. Moreover, the ALJ's RFC determination took into account those impairments. Thus, we find no error here.

E.    Determination that Zimmerman's obesity did not meet or equal Listing 1.04

Zimmerman's next argument is that the ALJ erred in finding that Zimmerman's impairments did not meet or equal the requirements of Listing 1.04, which describes disorders of the spine:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) [or two other sets of symptoms not relevant here].

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.04. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Zimmerman argues that his impairment met or equaled this listing because there was evidence that his pain radiated from his back to his left hip and leg, he had limited range of motion in

his spine, and he had a positive straight leg raising test. As to the requirement of evidence of nerve root compression, he notes that although his MRIs did not reveal this, a treating physician noted that his MRIs were blurred and MRI studies were limited due to his size.

We acknowledge that Zimmerman provided some evidence that his impairments might meet the Listing 1.04 requirements. However, we find that substantial evidence supports the ALJ's contrary conclusion that Zimmerman's impairment failed to meet or equal the criteria in the listing. First, Dr. Hanley reported in June 2004 that "[e]xamination of [Zimmerman's] lower extremities shows sensory intact," suggesting that the "sensory or reflex loss" requirement was not met. In addition, Dr. Hanley found that Zimmerman's motor strength was "5/5 in all muscle groups," suggesting no motor loss. Finally, there was no direct indication of nerve root compression. In light of this evidence, we may not substitute our judgment for that of the ALJ.

F. Determination that Zimmerman retained ability to perform work existing in significant numbers in the national economy

Zimmerman's final argument is that the ALJ erred in concluding that Zimmerman retains the ability to perform work existing in significant numbers in the national economy. To make this determination, the ALJ posed hypothetical questions to the vocational expert about what jobs a person with Zimmerman's limitations would be able to perform. See Bowling, 36 F.3d at 436 (holding that vocational expert testimony must be based on a hypothetical question that includes all limitations supported by the record). His questions included all limitations supported by the record, including the need to alternate sitting and standing at will; the need to avoid lifting more than twenty pounds at a time; the need to avoid heights and climbing; and the need for low stress and limited public contact. Zimmerman's suggestion that the hypothetical questions were insufficient is essentially a restatement of his earlier arguments

that the ALJ did not adequately consider his obesity-related and mental impairments, arguments we have already rejected.

The vocational expert testified that based on these limitations, Zimmerman could perform three jobs existing in significant numbers: small products assembler (200,000 jobs nationally and 1000 locally), hardware assembler (40,000 jobs nationally and 300 locally), and "assembler/bench assembler/lawn and garden equipment" (20,000 jobs nationally and 150 locally). Zimmerman argues that this case must be remanded because (1) "bench assembler/lawn and garden machinery assembler" is a skilled position and therefore outside Zimmerman's RFC and (2) "bench assembler" and "small products assembler" are actually the same job. These arguments are without merit: even if we disregarded the availability of the job of bench assembler, there are 240,000 jobs remaining for Zimmerman in the national economy.[3] Thus, there is no reason to remand on this ground.

## IV. CONCLUSION

Because Zimmerman has failed to show that the ALJ's findings were either unsupported by substantial evidence or not compatible with the appropriate legal standards, we AFFIRM the ALJ's ruling.

AFFIRMED.

---

[3] Zimmerman's citation to Bagwell v. Barnhart, 338 F. Supp. 2d 723, 738 (S.D. Tex. 2004), does not aid his argument. In Bagwell, the court remanded a case to an ALJ for further findings where one of three jobs the vocational expert identified was outside the claimant's RFC because the expert had not testified about whether the two other jobs existed in significant numbers in the national economy. Id. Here, in contrast, the vocational expert gave specific numbers for each of the three jobs he identified.